UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO: 10-174 |
| MICHAEL ROUSSEL | SECTION: J(3) |

**ORDER**

Before the Court is Defendant Michael Roussel's **Motion for Bond Pending Appeal (Rec. Doc. 147)** and **Motion for Special Hearing on Motion for Bond Pending Appeal (Rec. Doc. 148)**, as well as the Government's **Memorandum in Opposition (Rec. Doc. 151)**.

On April 1, 2011, Defendant Michael Roussel was convicted on one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 371, and two counts of wire fraud in violation of 18 U.S.C. § 1343. On September 8, 2011, the Defendant was sentenced to a term of imprisonment of 136 months, with a surrender date of November 15, 2011. On November 8, 2011, one week before his surrender date, Defendant filed the instant motions, seeking to stay his surrender date and to be released on bond pending an appeal of his conviction.

A court may release a defendant pending appeal only if it finds by clear and convincing evidence: (1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community; and (2) that the appeal is not for the purpose of delay and raises a substantial question of law

or fact likely to result in reversal of his conviction, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence not exceeding time already served plus the expected duration of the appeal.  See 18 U.S.C. § 3143(b).

Defendant contends that Mr. Roussel is a family man who has complied with all conditions of his bond since the time of his arrest in this case.  Further, he argues that his appeal raises substantial questions of law likely to result in an overturned conviction or an order for a new trial.  The Defendant's contentions relate primarily to the Court's rulings which limited defense counsel's cross-examination of Joseph Branch, his co-conspirator, on the issue of his potential exposure under the United States Sentencing Guidelines.  He essentially argues that the Court's rulings violated his constitutional rights under the Confrontation Clause of the Sixth Amendment by preventing him from establishing that Branch lacked credibility and had a motive to lie by curtailing questions about the extent to which his sentence was reduced by his cooperation.

The Sixth Amendment's Confrontation Clause guarantees a criminal defendant the right to cross-examine witnesses testifying against him, see Davis v. Alaska, 415 U.S. 308, 315 (1974), but this right is not unlimited.  See Delaware v. Van Arsdall, 475 U.S. 673, 679-80 (1986).  The right to cross-examine

witnesses is not violated so long as the defendant is allowed the opportunity to elicit factual testimony which allows the jury to draw inferences as to the witness' reliability. See United States v. Davis, 393 F.3d 540, 548 (5th Cir. 2004). In the alternative, a defendant may show that a court abused its discretion in limiting the scope of cross-examination by showing clear prejudice, i.e., that "a reasonable jury might have had a significantly different impression of the witness's credibility if defense counsel had been allowed to pursue the questioning" at issue. Id. at 548.

In support of his argument, Defendant cites United States v. Chandler, 326 F.3d 210, 221-23 (3d Cir. 2003), in which the Third Circuit held that a defendant's Sixth Amendment rights were violated when the trial court prohibited cross-examination regarding a witness's expectation of a reduced sentence to receive in exchange for his testimony against the defendant. However, in United States v. Wilson, 408 Fed. App'x. 798, 803-804 (5th Cir. 2010), the Fifth Circuit was confronted with a situation analogous to the instant case, and declined to adopt the holding of Chandler. In Wilson, the trial court had limited the scope of the defendant's cross-examination to establishing the cooperating witness's plea agreement and his motives for entering the plea agreement, which included the expectation of a decreased sentence. Id. It did not, however, permit the

defendant to establish the "magnitude of the benefit" that the cooperating witness expected to receive by virtue of his plea agreement and testimony against his co-conspirator. Id. Nonetheless, the Fifth Circuit held that the Defendant's Confrontation Clause rights had not been violated, and that he had been afforded an adequate opportunity for effective cross examination by revealing the potential bias of the cooperating witness's testimony. Id.

Here, the extent of cross-examination which the Court permitted exceeded even that which was found constitutionally sufficient in Wilson. The Defendant was given the opportunity to cross examine Mr. Branch not only as to the existence of his plea agreement and his expectation of a decreased sentence, but also on the actual reduction in sentence Mr. Branch expected to receive in exchange for his testimony and plea agreement. An excerpt of the relevant portions of the Defendant's cross-examination of Mr. Branch is listed below:

> **Q. Leaving that for a moment, you were originally indicted on one count, correct?**
>
> **A. Yes, sir, originally.**
>
> **Q. A count of conspiracy, right? No, it wasn't. It was a count of wire fraud, wasn't it?**
>
> **A. Yeah, I'm not sure the exact charge, but, yeah, wire fraud.**

Q. And your Washington lawyer told you it carried a maximum penalty of 20 years, correct?

A. I don't remember exactly what he told me the penalty was at the time.

Q. Well, you know it's more than five, don't you?

A. Yes, sir.

Q. I mean, you were arraigned on it in front of the judge across the way?

A. Judge Moore, yes.

Q. And they told you what the maximum penalties were, didn't they?

A. Yes. Matter of fact, I think they said 30 years.

Q. 30 years?

A. Yes, sir.

Q. Because of the Stafford Act, right?

A. I think they mentioned that, yes, sir.

Q. And that arraignment was back in June of 2010, correct?

A. Yes, sir.

Q. And you started talking to the Government on September 1st, 2010, right? Or 2nd?

A. Yeah, right around there.

Q. Right around Labor Day.

A. I don't know when Labor Day is. Sorry.

Q. You don't know when Labor Day is?

A. No, sir. Work right through it.

Q. But you remember June 14th?

A. Oh, yes, sir.

Q. You remember the conversation at Gordon Biersch?

A. Gordon Biersch was on June the 10th.

Q. Pardon me?

A. Gordon Biersch was on June the 10th, not the 14th.

Q. But you don't know what month Labor Day falls in?

A. No, I don't.

Q. And then you talked to the Government on a couple of more occasions, right?

A. Yes, sir.

Q. And in June -- in January, you and Mr. Roussel were indicted again for more counts, correct?

A. Yeah, I'm not sure what month it was, but, yes, we were indicted for, I think, several more charges.

Q. In fact, one count of conspiracy?

A. Yes, sir.

Q. Carrying, as you understand it to be, zero to five years?

A. Yes, sir.

Q. And five counts of wire fraud, correct?

A. I don't know what all the other counts were.

Q. Well, you've seen the indictment.

A. Yes, but I don't remember exactly what all the different charges were.

Q. And you know that you were looking at 30 years

on each of those additional charges, correct?

A. It went up to 30 years.

Q. On each charge.

A. Yes.

Q. So with five --

MR. MAGNER: I'm going to object to this as being misleading, particularly in light of the sentencing guidelines and those types of things.
THE COURT: Sustained.

MR. REED: I'll get to the sentencing guidelines.

THE COURT: Approach the bench.

[At this point, counsel approached the bench to discuss the Government's objections to the scope of the Defendant's cross examination regarding Branch's potential exposure under the Sentencing Guidelines]

Q. So, Mr. Branch, as a result of the deal that you made with the Government, you're now facing a maximum of absolutely no more than five years; is that correct?

A. Up to five years, yes, sir.

Q. That's correct?

A. Yes, that's my understanding.

Q. You cannot get more than five years?

A. That's my understanding.

* * * *

Q. You also understand that the judge will hear from the Government regarding your sentence, correct?

A. They can. The Government don't have to send

anything in. It's up to them if they want to, to the judge, is my understanding.

Q. And the Government can, if it wants to, make recommendations that may help you with the judge, correct?

A. Yes, but I was told that the judge could -- you know, that it's going to be ultimately the judge's decision what he does.

Q. But you know that the Government can say certain things in your favor or not in your favor, correct?

A. Yes. Of course they can, yes, sir.

Q. And that is part of your agreement with the Government?

A. My agreement with the Government is I come up here and I tell the Court the truth. That's my agreement. That I don't lie. I was told if I lie, they are going to charge me with perjury. And that, you know, on my current charge, with my plea agreement, I could get up to five years and the fine.

Q. My question was, part of your agreement with the Government is that they may make recommendations on your behalf; that is part of the agreement, isn't it?

A. Yes, they may do it. Yes, sir.

Based on this testimony, it is clear that the Defendant cannot establish that his appeal will raise a substantial question of law with regards to his Sixth Amendment rights under the Confrontation Clause. Here, the Defendant was afforded the opportunity to establish that Mr. Branch faced a potential

maximum term of imprisonment of up to thirty years for the original count of conspiracy to commit wire fraud, a potential maximum term of thirty years for each of the additional counts of wire fraud in the superseding indictment, that he was cooperating with the government and had entered into a plea agreement which capped his maximum sentence at five years, and that the government was permitted but not obligated to make a 5k motion for a downward departure or a favorable recommendation.[1]  While the Defendant may have wished to inquire further regarding the specifics of Branch's potential sentencing ranges, the Confrontation Clause guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish".  Delaware v. Fensterer, 474 U.S. 15, 20 (1985)(emphasis in original).  For similar reasons, the Defendant's appeal will not raise a substantial question as to whether he was clearly prejudiced when the court limited the scope of Branch's cross-examination.  The jury was given a opportunity to form a thorough and well-informed opinion regarding Branch's motives for testifying and his credibility.  See United States v. Jiminez, 464 F.3d 555, 562 (5th Cir. 2006).

---

[1] Furthermore, much of this information was previously established by the government in Mr. Branch's testimony on direct examination.

In sum, the Court finds that the Defendant's appeal will not raise a substantial question of law as required by 18 U.S.C. § 3143(b). Accordingly,

**IT IS ORDERED** that Defendant's **Motion for Bond Pending Appeal** and **Motion for Special Hearing for Motion for Bond Pending Appeal** are hereby **DENIED.**

New Orleans, Louisiana, this 14th day of November, 2011.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE